Green, J.
delivered the opinion of the court.
This is a bill to enjoin the sale of certain slaves, that have beenTevied on by virtue of an execution in favor of the defendant against John Lyon, on the ground that they were conveyed to the complainant by a deed of gift, before the rendition of Fly’s judgment.
The defendant brought his action on the case for slander against the said Lyon, and pending said action this deed of gift was made, Lyon, the donor, was entirely free from debt when the deed was made, but was old and infirm, and without .wife or children. The donee is his nephew, and the deed is a *586 transfer to him of all the said Lyon’s estate, land, negroes, stock, &c.
Fly obtained a judgment in his action against Lyon for upwards of $1200 dollars, and caused this execution to be levied ■on a portion of the negroes thus conveyed to the complainant by Lyon, and this bill is brought to enjoin the sale of said property for the satisfaction of the plaintiff’s execution. Two questions are in this case.
1st. Is this deed void by the statute of frauds, and
2d. Was it made with the intention to defeat any recovery Fly might obtain in his action then pending.
As to the first question, we think this conveyancers not within the operation of the act of 1801, chap. 25, sec 2. That act declares, that conveyances made to “delay, hinder, or defraud ■creditors of their just and lawful actions” &c. shall be void.
A party who has a right of action for a tort, cannot be deemed a “creditor” until he obtains a judgment. The wrong-doer is in no sense a debtor by reason of the wrong, until the judgment of a court shall fix upon him a pecuniary burden for the redress of the wrong.
2. But we are all of opinion, that this deed was made in view of the suit of Fly then pending,- and with the design and intent of defeating the satisfaction of any judgment Fly might obtain.
The testimony is very voluminous, and we do not feel called Upon to refer minutely to all the proof by which our minds have been led to this conclusion.
The old man Lyon was entirely free from debt, and be had no motive to make such a conveyance, except to defeat Fly. If he had chosen to dispose of his property by deed rather than by will, and had made the deed with that view only, common prudence and ordinary discretion would have dictated the stipulation, that it should take effect after his death. But for an old man of handsome estate, to strip himself of every thing from which he could desire support, and place it in the hands of a nephew, who might forget and disregard the obligations of gratitude; or who might squander the property, or might die and leave the donor a helpless beggar, cannot be accounted for *587 upon tbe ground that the deed was intended only as a means of disposing of his property after his death.
Besides, this suit for slander was pending. The defendant in the suit knew that he had uttered the slanderous words, and he must háve expected a verdict and judgment against him. Thus situated, he made this deed of gift, inserting in the conclusion of it the following clause: “Now this indenture is not to hinder or delay the collection of any of my just debts, but the same are to be paid.” Why this clause? He says himself, he did not owe five dollars.
There were no debts to be affected by the deed, and no person except Fly, who would be at all concerned as to his motive in making the deed. But this clause is evidently the result of a consciousness on his part, that it might be thought by others, that the deed was made with a fraudulent design, and free from debt as he was, indicates that his purpose was to defeat Fly. He told Williams that Fly wanted to get his properly, but he had fixed things, so that he would never get any thing. Lyon remained in possession of the property as before the deed, took control of it as his own; sold the crops and some of the stock, and in every respect acted as owner.
All these circumstances, and other facts not here mentioned, satisfy us that the donor had other motives for making this deed than the mere wish to substitute it for a will in the final disposition of his property. But there is no assignable motive than that he wished to defeat any recovery Fly might obtain in the slander suit. We therefore think the chancellor was right in dismissing the bill, and affirm the decree.